Caruthers, J.,
delivered the opinion of the court.
This bill is filed by eleven persons of color in their own names to establish their right to freedom against the defendants, who hold them as slaves. They charge, *153 that they were the slaves of one James Doran of Jackson county, Alabama, who made his will in 1840, and died, providing for the emancipation of petitioners at the death of his widow. This bill was filed in the' chancery court of Franklin county, in February, 1852, under the pauper act. The defendants answered it, denying the merits, and reserving the question of their right to file it in their own name. At the first term, (February, 1852,) an amended bill was filed. At the same term, defendants moved to dismiss the suit upon the ground that slaves can only sue by next friend, and ’ not in their own names. This motion was sustained by the chancellor, and appeal to this court.
The case presents for our consideration the single question, whether by the laws of this State, persons of color, who are held in slavery, can sue for their freedom in their own names, and without a next friend. The question is said to be a new one, and the evils resulting from a decision of it either way are enumerated and pressed upon the court in the argument.
On the one side, it is said, that if they cannot be heard without the active agency and responsibility for cost, of some free person, they will often be deprived, as in this case, of most valued of all boons, the sacred right of freedom. That it would be a reproach upon our laws to deny a resort to our courts of justice to the down trodden and oppressed, because no one could be found to befriend them. On the other hand it is urged that if slaves were permitted to karrass their owners with suits and costs at pleasure, without some responsible free person to stand forward as their friend, and vouch for their cause, there would be no quiet *154 and. subordination in tbe community, and this species of property would be worthless.
But it is not our province to weigh and balance these considerations, but to pronounce the law. The legislature can, and should look to such inconvenience and hardships, if any such exist, but the courts cannot. They must administer the law as it is. It is not for them to say what the laws should be, but what they are. If liberty, the most valued of all rights, is withheld from any human being, who by the law, is entitled to it, because no mode has been provided for its successful assertion, and because none can be, consistently with the general and greater interest of the whole community, then on the score of public policy and self preservation of the greater number, it may be justifiable. These questions and considerations all belong to another department of our government, and not to the judiciary.
Then, what is the law on the question presented? "We are aware of no adjudication of the point, or that it ever has come up in form before this court. It is said, and several cases are referred to in our reports, where there is no notice of a next friend, that such suits have been entertained by our courts without a next friend.
But no case is brought to our notice, and we are aware of none, where the question was presented for adjudication. Nor do we know of any case, where a suit has been instituted and entertained with this essential defect, and certainly, with our views of the policy of the country, we would not make such a rule if we had the power to do so. "Whether the institution of slavery is an evil, either civil, political or moral, or *155 ■whether it is the policy of the States, where it exists, to encourage and facilitate emancipation, are questions on which much has been, and may be said on each side, and which it is not our present purpose to discuss.
Our laws afford ample means to any who are unlawfully held in slavery, to assert and prosecute their right. The courts are open to them and an inclination always manifested to favor their claim, where it is at all sustained. They are generally taken out of the possession of the master/ as in this case, and placed under the protection of the court, and time allowed them to prepare and prosecute their claim. In the liberality and humanity of ■ the law, they find a safe reliance for the most efficient professional aid. The experience of our country also demonstrates that no difficulty is ever found where the claim is calculated to inspire the least confidence in its justice, in procuring the agency of responsible citizens to stand forth as next friend, in any suit which may he necessary to establish their claim of freedom. But still, if this were otherwise, our decision would have to be the same under the present state of our laws upon the subject. A slave can have no staUis in court except by a next friend. And in such cases a motion to dismiss may be made at any stage of the proceedings. No demurrer or plea is necessary. They are property, and have no rights except such as are extended to them by some law, and in this State we think these are, as they should be, sufficiently ample to satisfy all the demands of justice and humanity.
This inability to sue in their own names is not confined to slaves, but is extended likewise, with but few exceptions, to all persons under the age of twenty-one, and femes covert.
*156 It is not therefore an anomalous rule applying alone to slaves. In each case it is founded on sound reason, and the most enlightened policy, and cannot with safety be changed or revoked.
We think therefore that there is no error in the decree of the chancellor, dismissing the bill, and consequently affirm it.